FILED
CLERK ... CT COURT
-9 OCT 01 AM 11:10
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

Jonathan O. Hafen (6096)
Parr, Waddoups Brown Gee &
  Loveless
Suite 1300
185 South State Street
Salt Lake City, UT 84111-1537
(801)532-7840

Timothy S. Cole
Maria V. Martin
Rubin & Associates, P.C.
MCS Building, Suite 202
10 South Leopard Road
Paoli, Pennsylvania 19301
Telephone (610) 408-2010

Attorneys for Merrill Lynch, Pierce,
Fenner & Smith Incorporated

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a Delaware corporation,<br><br>             Plaintiff,<br><br>       vs.<br><br>RUSSELL K. CANNON, an individual,<br><br>             Defendant. | **COMPLAINT**<br><br>Case No. _____<br><br>Honorable _____<br><br>**1:01CV0127 K** |

Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), by its undersigned attorneys, hereby brings the following Complaint for injunctive relief against Defendant Russell K. Cannon ("Defendant") for (i) breach of contract; (ii) violations of the Utah Uniform Trade

Secrets Act, Utah Code Ann. §§ 13-24-1 to 13-24-9; (iii) conversion of confidential business information; (iv) breach of duty of loyalty, and (v) unfair competition, and in support thereof avers as follows:

## I. PARTIES

1. Merrill Lynch is a Delaware corporation maintaining its principal place of business at the World Financial Center, North Tower, New York, New York and transacting business in this judicial district through a branch office located in Cottonwood, Utah. Merrill Lynch is a citizen of the States of Delaware and New York.

2. Defendant is a former Financial Advisor at Merrill Lynch's Cottonwood, Utah office. Defendant is a citizen and domiciliary of the state of Utah, and on information and belief resides at 1423 North 125 W, Bountiful, Utah, 84010.

## II. JURISDICTION AND VENUE

3. Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65(a). Venue is proper in this judicial district under 28 U.S.C. § 1391(a), inter alia, as it is the district in which the conduct complained of arose and in which Defendant last worked for Merrill Lynch.

## III. THE FACTS

4. Merrill Lynch is engaged in the business of, inter alia, providing financial services.

5. Defendant commenced his employment with Merrill Lynch on or about October 25, 1996.

6. As a condition of his employment with Merrill Lynch, Defendant executed an employment agreement known as a Financial Consultant Employment Agreement and Restrictive Covenants (the "Agreement"). A copy of Defendant's Agreement is attached hereto, made part hereof, and marked as Exhibit **"A"**.

7. In consideration for the Agreement signed by Defendant, Merrill Lynch agreed to:

(a) Employ Defendant;

(b) Pay Defendant a salary;

(c) Provide Defendant with opportunities, continued support, accounts, and facilities; and

(d) Provide other good and valuable consideration.

8. Merrill Lynch provided the above considerations to Defendant and has satisfied all conditions precedent.

9. More specifically, Merrill Lynch compensated Defendant at all times during his employment with Merrill Lynch, provided Defendant with intensive introductory training to the securities industry and continuing and on-the-job training opportunities, paid for facilities, computer equipment, market reporting services, and other business expenses, provided Defendant with abundant sales opportunities, and paid for Defendant's registrations with the New York Stock Exchange, National Association of Securities Dealers, the American Stock Exchange, and the applicable state securities commissions.

10. In addition to the foregoing, Merrill Lynch provided Defendant with office facilities, secretarial services, clearing services, operational systems, product inventory, sales assistants, research, access to and use of experts in asset management, tax, estate planning and insurance, promotional marketing and sales support, as well as the benefit of Merrill Lynch advertising, goodwill and name recognition.

11. Merrill Lynch also provided Defendant with customer accounts, customer referrals, reassignments of former and current Merrill Lynch accounts, customer leads and new accounts generated by Merrill Lynch's national advertising campaign, from local seminars, from mailers, from "walk-in" and "call-in" customers, and/or from lists purchased and acquired by Merrill Lynch.

12. In order to perform his duties while employed by Merrill Lynch, Defendant had access to the books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets, net worths, investment histories, and the securities held by these customers in their Merrill Lynch accounts.

13. As a result of the foregoing, Defendant specifically had access to information and records that revealed the names, addresses and confidential information of hundreds of Merrill Lynch accounts, representing millions of dollars in assets under Merrill Lynch management. The accounts serviced by Defendant generated over **$545,700** in revenues for Merrill Lynch in 2000 alone.

14. In consideration of the foregoing benefits and opportunities provided by Merrill Lynch to Defendant, Defendant agreed in his Agreement, inter alia, that:

1. **All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information, contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch.** This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. **I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.**

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2. **If, at any time, I resign from Merrill Lynch,** provoke my termination, or am terminated for cause, **I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity.** My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

> (a)  to transfer from Merrill Lynch to me or to my new employer, or

        (b)    to open a new account with me or with my new employer, or

        (c)    to otherwise discontinue its patronage and business relationship with Merrill Lynch.

See Exhibit "A" at ¶¶ 1-2 (emphasis added in part).

    15.    In his Agreement, Defendant further explicitly agreed to the entry of injunctive relief by this Court pending arbitration as follows:

> 4. In the event that I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, **I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:**
>
> (a) **that I immediately return to Merrill Lynch all records** whether original, duplicated, computerized, handwritten, or in any other form whatsoever, **and that I be enjoined and restrained from using or disclosing any information contained in such records;** and
>
> (b) **that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch,** in any office and in any capacity; and
>
> (c) **that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2** or whose records and information was used in violation of paragraph 1. . . .
>
>                   \*     \*     \*
>
> 5. **For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill**

**Lynch.** This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

See Exhibit "A" at ¶¶ 4-5 attached hereto (emphasis added in part).

16. Defendant further agreed to abide by Merrill Lynch's <u>Conflict of Interest</u> agreement, which provides, in relevant part:

> **I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.**
>
> \*   \*   \*
>
> I have read and agree to abide by this statement of Merrill Lynch & Co. policy. **I also understand completion of this form is a condition of employment.**

See Exhibit "B" (emphasis added).

17. As a condition of his employment with Merrill Lynch, Defendant further agreed, in writing and on an annual basis, to abide by Merrill Lynch's <u>Compliance Outline for Financial Consultants</u>, which provides, in pertinent part, as follows:

> **CONFIDENTIALITY OF CLIENT INFORMATION**
>
> You may not discuss the business affairs of any client with anyone, including other employees except on a need-to-know basis. **Information or records concerning the business of the Firm and/or its clients may not be released** except to persons legally entitled to receive them.

See Exhibit "C" (emphasis added).

18. Defendant also agreed in writing to abide by Merrill Lynch's <u>Guidelines for Business Conduct</u>, which provides, in relevant part:

> **Merrill Lynch's assets include more than capital; they also include** its facilities, equipment, **information,** technology, business plans, ideas for new products and services, **trade secrets,**

7

> inventions, copyrightable materials, and **client lists**. It is critical that all employees safeguard such assets in accordance with corporate policies. **Employees are expected to use company assets only for the purposes intended -- never for their own personal benefit**, except when particular assets are approved for general employee or public use. **This policy extends even to business opportunities that come to employees as a result of their employment**. These are considered proprietary opportunities belonging to Merrill Lynch. Employees should be aware that state and federal laws, regulatory controls, and contractual and licensing obligations for such assets govern our actions as well as the actions of the company's vendors and consultants.
>
> The policies on inside information are not limited to the securities area. All employees must exercise equal care not to misuse any non-public corporate information, **including client lists**, information about Merrill Lynch personnel, and business plans and ideas.

See Exhibit "**D**" at pp. 3-4 (emphasis added).

19. Defendant resigned, without prior notice, from Merrill Lynch on Friday October 5, 2001, and immediately joined Salomon Smith Barney, Inc. (hereinafter "Smith Barney"), a direct Merrill Lynch competitor, at its office in Salt Lake City, Utah.

20. Merrill Lynch believes and, therefore, avers that Defendant has engaged in, is engaging in, and will continue to engage in, inter alia, the following acts:

(a) Using and/or disclosing to others sensitive and confidential information pertaining to Merrill Lynch customers as well as Merrill Lynch's trade secrets and confidential business information;

(b) Soliciting Merrill Lynch's clients to terminate their relationship with Merrill Lynch and transfer their accounts to his new employer; and

(c) Other such acts contrary to the terms, conditions, and provisions of paragraphs 1-2 of Defendant's Agreement and other Merrill Lynch policies he agreed to in writing.

## COUNT I

### INJUNCTIVE RELIEF

21. The averments of Paragraphs 1 through 20 are incorporated by reference herein with the same force and effect as if set forth in full below.

22. By virtue of the foregoing, Merrill Lynch has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendant.

23. Unless Defendant is temporarily and preliminarily enjoined from the foregoing conduct, Merrill Lynch will be irreparably harmed by:

(a) Disclosure of trade secrets, customer lists, and possibly other confidential information which are solely the property of Merrill Lynch and its clients;

(b) Loss of confidentiality of the information contained in clients' records, loss of confidentiality of clients' financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

(c) Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

(d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

24.     Merrill Lynch has no adequate remedy at law.

WHEREFORE, Merrill Lynch respectfully requests that a Temporary Restraining Order and/or a Preliminary Injunction Order issue immediately, enjoining Defendant, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Smith Barney, until hearing and thereafter until further Order of this Court, from:

(a)     Violating and/or failing to comply with Defendant's <u>Financial Consultant Employment Agreement and Restrictive Covenants</u> which he entered into with Merrill Lynch and which is attached as Exhibit "A" hereto;

(b)     Destroying, erasing or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) which were obtained from Merrill Lynch documents, contain information pertaining to the Merrill Lynch clients Defendant serviced or whose names he learned during his Merrill Lynch employment, or which relate to any of the events alleged in the Complaint in this action; and

(d)     Any and all other such acts as this Court deems appropriate for injunctive relief.

## COUNT II

### BREACH OF CONTRACT

25.     The allegations of Paragraphs 1 through 24 are incorporated herein by reference with the same force and effect as if set forth in full below.

26. Defendant has violated, and/or intends to violate, inter alia, paragraphs 1-2 of his Agreement with Merrill Lynch, attached hereto as Exhibit "A", as well as the Merrill Lynch policies which he agreed to abide by in writing.

27. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS

**(Utah Code Ann. §§ 13-24-1 to 13-24-9)**

28. The allegations of Paragraphs 1 through 27 are incorporated herein by reference with the same force and effect as if set forth in full below.

29. The books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets and/or securities held by these customers in their Merrill Lynch accounts and other financial information, are trade secrets of Merrill Lynch subject to protection under the Utah Uniform Trade Secrets Act, Utah Code Ann. §§ 13-24-1 to 13-24-9.

30. This information derives independent economic value by not being accessible, through proper means, to competitors of Merrill Lynch such as Smith Barney, who can profit from its use or disclosure.

31. Merrill Lynch has taken more than reasonable measures under the circumstances to maintain the secrecy of this information, including, inter alia, by having Defendant and other

11

employees sign the Agreement and additional policies prohibiting use and disclosure of such information outside of Merrill Lynch.

32. The foregoing conduct of Defendant constitutes a misappropriation and misuse of Merrill Lynch's confidential, trade secret information.

33. Defendant's misappropriation of Merrill Lynch's trade secrets was malicious and willful.

34. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV

### CONVERSION

35. The allegations of Paragraphs 1 through 34 are incorporated herein by reference with the same force and effect as if set forth in full below.

36. The foregoing conduct of Defendant constitutes a conversion of Merrill Lynch's confidential business information, Merrill Lynch's property, and Merrill Lynch's proprietary rights and interests.

37. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT V

### BREACH OF DUTY OF LOYALTY

38. The allegations of Paragraphs 1 through 37 are incorporated herein by reference with the same force and effect as if set forth in full below.

39. Defendant has violated the common law duty of loyalty arising under his employment contracts and relationships with Merrill Lynch.

40. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

### COUNT VI

### UNFAIR COMPETITION

41. The allegations of Paragraphs 1 through 40 are incorporated herein by reference with the same force and effect as if set forth in full below.

42. The foregoing conduct of Defendant constitutes an unfair method of competition.

43. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts II, III, IV, V and VI, Merrill Lynch demands judgment in its favor and against Defendant for temporary and preliminary injunctive relief pending an expedited arbitration hearing on the merits before a duly appointed panel of arbitrators to be held pursuant to paragraph 10335(g) of the National Association of Securities Dealers Code of Arbitration Procedure.

Dated this ___ day of October, 2001.

PARR WADDOUPS BROWN GEE & LOVELESS
and
RUBIN & ASSOCIATES

Jonathan O. Hafen
Timothy S. Cole
Maria V. Martin
Attorneys for Plaintiff Merrill, Lynch, Pierce, Fenner & Smith Incorporated

**Plaintiff's Address**
4 World Financial Center
250 Vesey Street
New York, New York 10080